# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| MARKEL AMERICAN INSURANCE COMPANY, | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | |
| | § | A-14-CV-00143-LY-ML |
| HUIBERT VERBEEK, ENGELBRECHT VERBEEK, and JACK ORMBERGET | § | |
| Defendants. | § | |
| | § | |
| | § | |

## REPORT AND RECOMMENDATION

TO THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

Before the Court are the following motions and related briefing:

(1) Defendants Huibert Verbeek and Engelbrecht Verbeek (collectively, for purposes of this motion, "Defendants," "the Verbeeks" or "Individual Defendants")[1] Joint Motion for Partial Summary Judgment on Plaintiff's Duty to Defend, [Dkt. # 23], Plaintiff Markel American Insurance Company ("Markel")'s Response [Dkt #32], and Defendants' Reply [Dkt. #35];

(2) Markel's Motion for Summary Judgment on Plaintiff's Duty to Defend [Dkt. #33], Defendants' Joint Response to Markel's Motion for Summary Judgment on Plaintiff's Duty to Defend [Dkt. #36], Markel's Supplement to Its Motion for Summary Judgment on Plaintiff's Duty to Defend [Dkt. #58], and Defendants' Joint Response to Markel's Supplemental Brief [Dkt. #64];

---

[1] It appears Defendant Jack Ormberget has not participated in the summary judgment briefing, either in the Motion for Partial Summary Judgment [Dkt. #23] filed by Huibert and Engelbrecht Verbeek, or in the Response to Markel's Motion for Summary Judgment filed by Huibert and Engelbrecht Verbeek. [Dkt. #36]. The court further notes original Defendant Kenney Verbeek was voluntarily dismissed pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i) on August 26, 2014. For purposes of this Report and Recommendation, therefore, the terms "Defendants" and "Individual Defendants" will refer to Huibert Verbeek and Engelbrecht Verbeek, and not to any codefendant or former codefendant, unless otherwise noted in the text.

(3) Defendants' Motion to Strike Plaintiff's Supplemental Briefing [Dkt. #60], Plaintiff's Response thereto [Dkt. #61], and Defendants' Reply [Dkt. #67]; and

(4) Markel's Motion for Leave to File Second Amended Complaint [Dkt. #48], Markel's Supplement to Motion for Leave to File Second Amended Complaint [Dkt. #51], Defendants' Response in Opposition to Motion for Leave to File Second Amended Complaint [Dkt #55], and Markel's Reply [Dkt. #59].

These Motions were referred by United States District Judge Lee Yeakel to the undersigned for a Report and Recommendation as to the merits pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.[2]  The Magistrate Court requested supplemental briefing relating to the cross motions for summary judgment on June 29, 2015 [Dkt. #47].  After reviewing the motions and related briefing, the requested supplemental briefing, the relevant case law, as well as the entire case file, the undersigned issues the following Report and Recommendation to the District Court.

## I. BACKGROUND

This dispute concerns whether, pursuant to a policy of Directors' and Officers' Insurance (the "Policy"), Markel has a duty to defend two lawsuits brought against Defendants for alleged fraud in the inducement of a refinancing agreement.  The policy obligates Markel to defend Insured persons against Claims arising out of Wrongful Acts, including "any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty by any

---

[2] See Order of May 20, 2015 [Dkt. #42] (referring Joint Motion for Partial Summary Judgment [Dkt. #23], Motion for Summary Judgment [Dkt #33], and related briefing); Order of July 1, 2015 [Dkt. #49] (referring Plaintiff's Motion for Leave to File Second Amended Complaint [Dkt. #48] and related briefing); and Order of August 12, 2015 [Dkt. #65] (referring Defendants' Motion to Strike Plaintiff's Supplemental Brief [Dkt. #60] and related briefing).

Insured Person in their capacity as such . . ..”  App'x to Df.'s Joint Mot. Part. Summ. J. [Dkt. #24], Ex. J, APP 0422.  There is no question that the D&O Policy was in effect during the relevant time frame, nor is there any question that the Defendants were Insured Persons, acting in their capacity as such, within the meaning of the D&O Policy, during that period.  *See id.* at APP 0420.  Nevertheless, Markel has filed suit requesting a declaratory judgment that exclusions in the policy language preclude coverage for the underlying lawsuits against the Defendants.  *See generally* First Am. Compl. [Dkt. #3].

Individual Defendant Huibert Verkbeek has filed counterclaims requesting a declaratory judgment that Markel is obligated to defend the claims, and seeking damages against Markel for breach of contract, attorney's fees, and violation of Texas Inusrance Code Chapter 542 (the "Prompt Pay Act").  *See generally* Df. Huibert Verbeek's Orig. Answer [Dkt. #12]. Individual Defendant Engelbrecht Verbeek, though he has not styled his affirmative claims for relief as counterclaims, states in his Answer to Markel's Complaint that he seeks a declaration that one or more claims in the underlying lawsuits are covered by the applicable insurance agreement, and seeks monetary relief including all costs and attorney's fees incurred in the coverage dispute and in connection with the underlying lawsuits.  Df. Engelbrecht Verbeek's Orig. Answer [Dkt. #5] at 11.

The cross-motions for summary judgment in this case focus on whether Markel is excused from defending the underlying suits pursuant to an exclusion (or exclusions) in the D&O policy.  The Individual Defendants' Joint Motion for Partial Summary Judgment additionally seeks judgment that Markel has violated provisions of the Texas Prompt Pay Act and owes penalties and attorney's fees as a matter of law.  Df.'s Joint Mot. Part. Summ. J. [Dkt. #23] at 22. Additionally and in the alternative, Defendants' Joint Motion for Partial Summary Judgment

3

seeks attorney's fees for breach of contract.  *Id.* To these claims, Markel has responded: "In the unlikely event the Verbeek's [*sic*] prevail on their motion, Markel does not dispute the Verbeeks [*sic*] claim to attorney's fees and penalties under the Texas Insurance Code and the Texas Civil Practice and Remedies Code, as set forth in paragraphs 57 and 58 of their motion."  Pf.'s Resp. to Df.'s Joint Mot. Part. Summ. J. [Dkt. #35 at 20, n.8.]

### A.      The Creditor Exclusion

Markel does not argue that either the Individual Defendants or the underlying lawsuits are outside the scope of coverage for any reason.  *See generally* Pf.'s Mot. Summ. J. [Dkt. #33]. Given the broad coverage established in the definition of "Wrongful Acts" in the Policy, cited above, such an argument would be difficult to make.  *See* App'x to Df.'s Joint Mot. Part. Summ. J. [Dkt. #24], Ex. J, APP 0422 ("Wrongful Act" includes "any actual or alleged . . . act, omission, neglect, or breach of duty by any Insured Person in their capacity as such," specifically including misleading statements.) Therefore, Markel is obligated to tender a defense of the claims against the Individual Defendants unless an exclusion to coverage applies.  *Trinity Universal Ins. Co. v. Employers Mut. Casualty Co.*, 592 F.3d 687, 691-92 (5th Cir. 2010) (While the insured bears the initial burden of showing that there is coverage, the insurer bears the burden of providing that any exclusion in the policy applies).

In its Motion for Summary Judgment [Dkt. #33], and in its Response to Defendants' Joint Motion for Partial Summary Judgment [Dkt. #32], Markel relies on the following "creditor exclusion" to deny coverage in this case:

### EXCLUSION—BANKRUPTCY AND CREDITORS

This endorsement modifies insurance provided under the following:

DIRECTORS AND OFFICERS AND COMPANY LIABILITY
COVERAGE PART

The following exclusion is added to the **EXCLUSIONS** Section:

The Insurer shall not be liable to pay any **Loss** on account of, and shall not be obligated to defend, any **Claim** brought or maintained by or on behalf of:

1.      A bankruptcy or insolvency trustee, examiner, receiver, similar official or creditors committee of a **Company** or **Organization** or any assignee of such trustee, examiner, receiver, or similar official or creditors committee; or

2.      Any creditor of a **Company** or **Organization** in the creditor's capacity as such, whether or not a bankruptcy or insolvency proceeding involving the Company or Organization has commenced.

App'x to Df.'s Joint Mot. Part. Summ. J. [Dkt. #24], Ex. J, APP 0398.

The boldfaced terms in the Exclusion are defined terms under Section II of the insurance contract. *Id.* at APP 0408-10.  Markel contends the lawsuits tendered for defense arise out of the Verbeeks' attempt to refinance a credit facility for their business, so this creditor exclusion should apply.  Pf.'s Mot. Summ. J. [Dkt. #33] at 12-15; Resp. Df.'s Joint Mot. Part. Summ. J. [Dkt. #32] at 14-15.  The Verbeeks counter that the plaintiffs in the underlying lawsuits are not suing to recover the money they advanced as creditors, but to hold the Verbeeks individually liable for allegedly making material misstatements and omissions that defrauded the plaintiffs into entering the credit facility.  Df.'s Joint Mot. Part. Summ. J. [Dkt. #23] at 14-15; Resp. Pf.'s Mot. Summ. J. [Dkt. #36] at 8-10.  It is, of course, possible for the officers of a company to defraud lenders in their capacity as creditors. The Verbeeks, however, assert the allegations in these underlying suits are not made in the plaintiffs' capacity as creditors of Color Star, but in their capacity as investors in the credit facility.  *See generally id.*

### B.  The Investor Exclusion

Neither Markel nor the Individual Defendants have provided any case law in their cross motions for summary judgment to support their respective definitions of a creditor of Color Star

5

Case 1:14-cv-00143-LY   Document 70   Filed 09/17/15   Page 6 of 33

who is suing the Verbeeks "in its capacity as a creditor" as opposed to suing in some other capacity. *See* App'x to Df.'s Joint Mot. Part. Summ. J. [Dkt. #24], Ex. J, APP. 0398. Given the Defendants' contention that the plaintiffs in the underlying suits are not suing as creditors, but as investors, the Magistrate Court invited the parties to submit "no more than 10 pages of supplemental briefing concerning the effect, if any, of *SEC v. W.J. Howey Co.*, 328 U.S. 293, 66 S. Ct. 1100 (1946) and its progeny on the creditor exclusion in the insurance policy at issue."

Although *Howey* is a securities case, not an insurance defense case, the *Howey* test has provided the baseline distinction between "investment contracts" and other types of transactions (such as loans, liens, and other creditor agreements) for approximately 69 years. *See, e.g., Life Partners, Inc. v. Arnold*, No. 14-0122, 2015 Tex. LEXIS 440, 24-25 (Tex. 2015) (publication status pending) (citing *Howey*, 328 U.S. at 298 for the proposition that the court "must focus on the 'economic realities' of the transaction" to determine whether it is an investment contract.) Thus, application of the *Howey* test to the allegations brought in the underlying lawsuits may shed light on whether the "creditor exclusion" applies or whether, as the Verbeeks contend, the lawsuits' allegations concern disputes between investors.[3]   Under *Howey,* a contract is an investment contract, not merely a loan, if "the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others. If that test be satisfied, it is immaterial whether the enterprise is speculative or non-speculative or whether there is a sale of property with or without intrinsic value."  328 U.S. at 301.

---

[3] The Magistrate Court takes care to note that the application of *Howey* to the *allegations* of the underlying state court pleadings is all that is required for purposes of determining the duty to defend in this case. *GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006). The Magistrate Court in no way makes any factual or legal findings concerning whether the transactions at issue were actually investments, loans, or any other type of financial instrument; what matters is whether the complaints *allege* an investment dispute or a creditor dispute for purposes of analyzing the claimed exclusions in the Policy. *Id.; see also Colony Nat'l Ins. Co. v. Unique Indus. Prod. Co.*, 487 F. App'x 888, 890-92 (5th Cir. 2012).

On June 30, 2015, one day after the Magistrate Court invited supplemental briefing on this case law distinguishing investors from creditors, Markel sought leave to add the following "investor exclusion" in the contract as an additional affirmative defense:

> The Insurer shall not be liable under this Coverage Part to pay any **Loss** on account of, and shall not be obligated to defend, any **Claim** made against any **Insured**:
>
> K.      Based upon, arising out of, or in any way involving (i) the actual alleged or attempted purchase or sale or offer or solicitation of an offer to purchase or sell, any debt or equity securities, or (ii) the actual or alleged violation of any federal, state, local, or common or foreign law relating to debt or equity securities; provided this exclusion shall not apply to any **Claim**:
>
> 1.      Based upon, arising out of or in any way involving the purchase or sale or offer or solicitation of an offer to purchase or sell, any debt or equity securities in a private-placement transaction exempt from registration under the Securities Act of 1933, as amended . . .

Mot. Leave to File 2d. Am. Compl. [Dkt. #48], Ex. A; *see also* App'x to Df.'s Joint Mot. Part. Summ. J. [Dkt. #24], Ex. J, at APP 0423.   In addition to seeking leave to amend its complaint to assert this "investor exclusion" as an affirmative defense, Markel has briefed the application of this exclusion in the Supplement to its Motion for Summary Judgment [Dkt. #58] requested by the Magistrate Court.  *See* [Dkt. #58] at 8-10.

Defendants contend Markel should not be allowed to introduce a new affirmative defense after motions for summary judgment are on file, either as an amendment to its complaint or as an argument in supplemental briefing.  *See generally* Df.'s Resp. Mot. Amend [Dkt. #55], Df.'s Mot. Strike [Dkt. #60].  Defendants have elected not to address the investor exclusion in their supplemental briefing, contending it is beyond the scope of the Magistrate Court's briefing request.  Df.'s Joint Response to Suppl. Br. [Dkt. #64] at 8.  Defendants have moved to strike

Markel's supplemental briefing on the investor exclusion.  *See generally* Df.'s Mot. Strike [Dkt. #60].

For the reasons outlined below, the Magistrate Court GRANTS the Motion For Leave to File Second Amended Complaint [Dkt. #48]

The Magistrate Court further DENIES Defendants' Motion to Strike Plaintiff's Supplemental Brief [Dkt. #60], thus allowing Plaintiff to make its arguments concerning the applicability of the investor exclusion to limit the duty to defend the underlying lawsuits.  The undersigned finds, however, that Markel has not met its burden to establish all of the factual allegations in the underlying complaints fall within this investor exclusion.  *Trinity Universal Ins. Co.*, 592 F.3d at 691-92. Therefore, this exclusion provides no basis to limit coverage.  *Id.*

It does appear to the undersigned that each of the underlying complaints alleges the Individual Defendants fraudulently induced the financial institutions to loan Color Star money. To the extent the "factual allegations showing the origin of the damages" arise out of the creditor-debtor relationship between the financial institutions and Color Star, the creditor exclusion applies. *Colony Nat'l Ins. Co. v. Unique Indus. Prod. Co*., 487 F. App'x 888, 890-92 (5th Cir. 2012).  (internal citations omitted); *see also Evanston Ins. Co. v. Legacy of Life, Inc*., 645 F.3d 739, 745 (5th Cir. 2011) ("The eight corners rule focuses on the *facts* alleged in the complaint, rather than the legal theories, and considers these alleged facts (but *not* the legal theories 'without reference to their truth or falsity.'") (citing *Wilbros RPI, Inc. v. Cont'l Cas. Co*., 601 F.3d 306, 309 (5th Cir. 2010)). The undersigned finds all of the damages currently plead in the underlying complaints arise out of an allegedly fraudulently induced loan, and therefore the creditor exclusion applies.  *See Colony Nat'l Ins. Co.,* 487 F. App'x at 890-92; *Wilbros RPI, Inc.*, 601 F.3d at 311.

Accordingly, the undersigned RECOMMENDS that the District Court GRANT Plaintiff's Motion for Summary Judgment [Dkt. #33] on its original grounds—the application of the creditor exclusion—and not as supplemented by the arguments concerning the investor exclusion.

Finally, the Magistrate Court RECOMMENDS the District Court DENY Defendants' Joint Motion for Partial Summary Judgment [Dkt. #23]. Markel is not obligated to provide coverage in the underlying lawsuits, because Markel has met its burden to establish that the underlying factual allegations showing the origin of the damages fall within the creditor exclusion to the D&O Policy or cannot be separated from facts triggering the exclusion. *Wilbros RPI*, 601 F.3d at 311 (citing *Travelers Indem. Co. v. Citgo Petroleum Corp.*, 166 F.3d 761, 771 (5th Cir. 1999).

## II.   PRELIMINARY MATTERS

### A.   Leave to Amend and Motion to Strike

Plaintiff's Motion for Leave to File Second Amended Complaint [Dkt. #48] is governed by Federal Rules of Civil Procedure 15 and 16. *S&W Enters. v. Southtrust Bank of Ala.*, 315 F.3d 533, 536 (5th Cir. 2003). The District Court has entered a Scheduling Order in this case, under which the deadline for amending pleadings passed on April 30, 2015, two months before Plaintiff's proposed Amended Complaint. *See* Scheduling Order, [Dkt. #38]. The dispositive motion deadline imposed by the scheduling order passed on May 8, 2015, some 53 days before Plaintiff's motion for leave to amend the complaint was filed on June 30, 2015. *Id.* Under these circumstances, the motion for leave to amend must satisfy the "good cause" standard of Federal Rule of Civil Procedure 16(b)(4), in addition to the more lenient "freely given" leave of court

standard of Rule 15(a)(2).  *S&W Enters.*, 315 F.3d at 536; *see also Henry's Marine Serv. v. Fireman's Fund Ins. Co.*, 193 F. App'x 267, 273 (5th Cir. 2006).

To establish "good cause" for purposes of Rule 16(b), a party must "'show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *Fahim v. Marriott Hotel Servs.*, 551 F.3d 344, 348 (5th Cir. 2008) (quoting *S&W Enters.*, 315 F.3d at 535).  Four factors are relevant to establish good cause: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice."  *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003) (citing *S&W Enters.*, 315 F.3d at 536).  "Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave."  *S&W Enters.*, 315 F.3d at 536.

Rule 15(a) directs courts to grant leave to amend freely, absent some prejudice to the nonmovant.  *See* FED. R. CIV. P. 15(a)(2).  Even under the less demanding standards of Federal Rule of Civil Procedure 15(a), however, the Fifth Circuit "'carefully scrutinize[s] a party's attempt to raise new theories of recovery by amendment when the opposing party has filed a motion for summary judgment.'"  *Squyres v. The Heico Companies, L.L.C.*, 782 F.2d 224, 239 (5th Cir. 2015) (quoting *Parish v. Frazier*, 195 F.3d 761, 764 (5th Cir. 1999) (per curiam)).  "The summary judgment procedure has built-in protections against premature judgments." *Overseas Inns S.A. P.A. v. United States*, 911 F.2d 1146, 1151 (5th Cir. 1990).  When a motion for leave to amend is filed after motions for summary judgment have been filed, "to grant . . . leave to amend is potentially to undermine [the opposing party's] right to prevail on a motion that necessarily was prepared without reference to an unanticipated amend[ment]."  *Id.*

The timing of Markel's Motion for Leave to Amend implicates these concerns. In order to obtain leave to amend to assert the "investor exclusion" to coverage, Markel must establish good cause for the delay under Rule 16 and also meet Rule 15(a)'s requirement that no undue prejudice will result from their late amendment. *S&W Enters.*, 315 F.3d at 536. Defendants assert Markel's argument that it inadvertently overlooked the investor exclusion does not establish good cause. The Magistrate Court finds, however, that its request for supplemental briefing on the implications of *Howey*, coupled with Defendants' own arguments that the plaintiffs in the underlying lawsuits were acting in their capacity as investors, provided good cause for Markel to reassess the applicability of the investor exclusion to the duty to defend in this case.

Moreover, the Individual Defendants have failed to articulate any cognizable prejudice from allowing the amendment, even after summary judgment briefing has been prepared. Contrary to Defendants' assertions, discovery into whether the contracts at issue were actually investment contracts is not necessary in a dispute over the duty to defend, because such merits-based evidence is extrinsic to the "eight corners" of the insurance contract and the underlying complaint. *Colony Nat'l Ins. Co.*, 487 F. App'x at 890-92. And although Defendants opted not to address the investor exclusion in their supplemental briefing, the Magistrate Court's request for supplemental briefing certainly provided them the opportunity to do so.

Accordingly,

IT IS ORDERED that Plaintiffs' Motion for Leave to File Second Amended Complaint [Dkt. #48] be GRANTED.

IT IS FURTHER ORDERED that Defendants' Motion to Strike Plaintiff's Supplemental Briefing [Dkt. #60] is DENIED.

### B.       Texas Substantive Law Governs This Dispute

Markel asserts Colorado law applies to this dispute.  Pf.'s Mot. Summ. J. [Dkt. #33] at 9-10; Resp. Df.'s Joint Mot. Part. Summ. J. [Dkt. #32] at 8-10.  Markel takes this position despite the lack of a choice of law clause in the insurance contract, and notwithstanding the facts that (a) Markel chose the Western District of Texas as the forum for this dispute and (b) the lawsuits Markel seeks to avoid defending are brought in Texas state court.

A federal court sitting in diversity must apply the law of the forum state—in this case, Texas.  *Harken Exploration Co. v. Sphere Drake Ins. P.L.C.*, 261 F.3d 466, 470 n.3 (5th Cir. 2001).  Application of the forum state's law includes application of its choice of law rules. *Simmons v. Liberty Mut. Fire Ins. Co.*, 420 F. App'x 388, 390 (5th Cir. 2011) (citing *Delta Seaboard Well Servs., Inc. v. Am. Int'l Specialty Lines Ins. Co*., 602 F.3d 340, 342-43 (5th Cir. 2010)).  In the absence of a controlling choice of law provision in a contract, Texas follows the RESTATEMENT (SECOND) OF CONFLICT OF LAWS (1971) ("The Restatement"). *DeSantis v. Wackenhut*, 793 S.W.2d 670, 679 (Tex. 1990).   Section 6 of the Restatement directs a court to follow the statutory directives of the forum state regarding choice of law. RESTATEMENT § 6. Texas Insurance Code, Article 21.42 dictates that Texas law applies to insurance contracts if the insurance contract is payable to a Texas resident and offered by an insurance company doing business in Texas.   *Id.*; *see also Delta Seaboard*, 602 F.3d at 342.  Specifically,

> Any contract of insurance payable to any citizen or inhabitant of this State by any insurance company or corporation doing business within this State shall be held to be a contract made and entered into under and by virtue of the laws of this State relating to insurance, and governed thereby, notwithstanding such policy or contract of insurance may provide that the contract was executed and the premiums and policy (in case it becomes a demand) should be payable without this State, or at the home office of the company or corporation issuing the same.

TEX. INS. CODE art. 21.42.  Thus, in most cases "the Texas Insurance Code dictates that Texas law applies to insurance contracts." *Simmons*, 420 F. App'x at 390 (citing TEX. INS. CODE art. 21.42.); *see also Delta Seaboard*, 602 F.3d at 342.

Markel's choice of law argument relies on the "most significant relationship" test outlined in Section 188 of the Restatement, but these factors come into play only if no statutory mandate directs the application of Texas law.  *See, e.g., Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 403 (5th Cir. 2004) (finding there was no contractual choice of law clause or "statutory directive [that] governs the choice of law determination here, . . . so this Court applies the Restatement's fact-based analysis."); *W.R. Grace & Co. v. Continental Casualty Co.*, 896 F.2d 865, 883 (5th Cir. 1990) (acknowledging the Texas statute mandates choice of Texas law where insurance contract is "payable to any citizen or inhabitant of this State" but declining to expand statutory directive beyond its plain wording).  Here, Markel is an admitted lines insurer in Texas, First Am. Compl. ¶ 1, and three of the four insureds under the D&O policy at issue are Texas residents.  *Id.* at ¶¶ 2-5.  Of the Defendants participating in bringing the pending Motion for Partial Summary Judgment and Motions to Strike, at least one is a Texas resident.  *Id.* at ¶¶ 2-3.  Therefore, Texas Insurance Code, Article 21.42 applies to direct the choice of Texas' substantive law in this case.  *Delta Seaboard*, 602 F.3d at 342; *see also W.R. Grace*, 896 F.2d at 883.

## III. APPLICABLE LAW

### A.    Cross-Motions for Summary Judgment

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A dispute is genuine only if

the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004).

The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 221 (5th Cir. 2011). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Id.* Where, as here, the parties have filed cross motions for summary judgment, "the motions are reviewed independently, with evidence and inferences taken in the light most favorable to the nonmoving party." *White Buffalo Ventures, LLC v. Univ.of Texas*, 420 F.3d 366, 370 (5th Cir. 2005) (citing *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001)).

### B.     Texas Follows the "Eight-Corners" Rule

Texas courts apply the "eight-corners" or "complaint allegation" rule in deciding whether an insurer owes a duty to defend. *Potomac Ins. Co. v. Jayhawk Med. Acceptance Corp.*, 198

F.3d 548, 551 (5th Cir. 2000); *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002). Under this rule, courts must determine whether an insurer owes a duty to defend "solely from the allegations in the most recent [underlying] petition and the language of the insurance policy." *Harken*, 261 F.3d at 471; King, 85 S.W.3d at 187.  "As to the policy, if a term is susceptible to more than one reasonable interpretation, [the court] must resolve that uncertainty in favor of the insured."  *Evanston Ins.*, 370 S.W.3d 377, 380 (Tex. 2012) (citing *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006)).

The insured bears the burden of showing that the claim against it is potentially within the insurance policy's scope of coverage.  *Harken*, 261 F.3d at 471.  "The focus of this inquiry is on the facts alleged, not on the actual legal theories."  *St. Paul Fire & Marine Ins. Co. v. Green Tree Fin. Corp.-Tex.*, 249 F.3d 389, 392 (5th Cir. 2001); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997).  If the complaint alleges "even one covered claim, the insurer must defend the entire suit."  *Potomac*, 198 F.3d at 551; *Evanston*, 370 S.W.3d at 380 (citing *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008)). If, however, the complaint alleges both covered and excluded claims, the court must determine whether the covered claims provide an independent cause of the alleged damages or whether they arise out of the same set of facts trigger the policy exclusion. *Wilbros RPI.*, 601 F.3d at 311 (5th Cir. 2010) (citing *Travelers*, 166 F.3d at 771).  If the covered claims are an independent cause of the alleged damages, the insurer must defend the entire suit, but the insurer has no duty to defend based on covered claims that are entirely derivative of the same facts as the excluded claims.  *Travelers*, 166 F.3d at 771.

# IV. ANALYSIS

There are two lawsuits pending against the Defendant insureds:  Cause No. DC-13-14628, *MCG Capital Corporation Solutions Capital, LLP v. Barrier Advisors, Huibert Verbeek, Engelbrecht Verbeek, Kenney Verbeek, Jack Ormberget and Ehrhardt Keefe Steiner & Hottman, P.C.,* pending in the 101st District Court of Dallas County, Texas (the "MCG Suit"), and Cause No. DC-13-01466; *Regions Bank v. Nexbank Securities, Inc d/b/a NexBank Capital Advisors f/k/a Barrier Advisors, et al., currently pending in the 101st District Court of Dallas County, Texas* (the "Regions Bank Suit").   App'x to Df.'s Joint Mot. Part. Summ. J. [Dkt. #24], Ex. D, E.  The Regions Suit and the MCG Suit have been consolidated into a single lawsuit under Cause No. DC-13-14628.  *See id.* at Ex. D. Comerica Bank has intervened in the consolidated suit, asserting claims against Defendants.  *Id.* at Ex. I.

## A.  The Underlying Lawsuits Allege Fraud Against the Individual Defendants

Each live pleading in the underlying consolidated action makes virtually identical factual allegations concerning Huibert Verbeek and Engelbrecht Verbeek.  "In determining whether an exclusion applies, Texas courts 'examine the factual allegations showing the origin of the damages rather than the legal theories asserted by the plaintiff.'" *Colony Nat'l Ins. Co.*, 487 F. App'x at 890-92 (internal citations omitted).  With this principle in mind, and following the example of the parties themselves, who have briefed the application of the exclusions to the underlying lawsuits as a unit, the Magistrate Court examines the duty to defend the claims asserted in the underlying consolidated actions together.

16

MCG, Regions Bank, and Comerica have each filed pleadings alleging that the Individual Defendants participated in a fraudulent scheme to induce MCG, Regions, and Comerica to fund a multi-million dollar credit facility for the Color Star group of companies.  *See generally* App'x to Df.'s Joint Mot. Part. Summ. J. [Dkt. #24], Ex. D, E, I.  According to the live pleadings filed by MCG, Regions Bank, and Comerica, Regions Bank acted as the leader of a bank syndicate that funded the senior debt portion of the credit facility, totaling $52.5 million.  *Id.* at Ex. E, APP 0205.  Regions Bank is an Alabama state-chartered bank, regulated by the Federal Reserve Board, and authorized to do business in Texas.  *Id.* at Ex. E, APP 0206, 0209.  Comerica, a Texas banking association, was solicited by Regions Bank as a co-lender for the credit facility syndication, and provided one third of the total funding for the senior debt portion of the credit facility.  *Id.* at Ex. I, APP 0345-46, 0350.  MCG "is a publicly traded, commercial finance company that invests in companies throughout the United States."  *Id.* at Ex. D, APP 0150. MCG's wholly-owned subsidiary, Solutions (a co-plaintiff in the MCG complaint) "is a small business investment company ("SBIC") as defined by section 103 of the Small Business Investment Act of 1958 (15 U.S.C. § 662) and is licensed to operate as a SBIC by the Small Business Administration."  *Id.*  MCG/Solutions entered into the Subordinate Credit Agreement and Junior Loan that made up the remaining $13.5 million portion of the credit facility.  *Id.* at APP 0164.

The credit facility consisted in part of a revolving line of credit that was "formula based," "meaning that Color Star could only borrow the lesser of (a) the credit limit or (b) a specified percentage of the value of Color Star's inventory and receivables.  Thus, not only was Color Star's financial performance important to obtaining underwriting approval for the Regions Facility, but Color Star's inventory value would directly impact the amount of revolving credit

available to fund its operations." *Id.* at Ex. I, APP 0349.   Shortly after entering the syndicated credit facility, Color Star announced a "monumental" write-down in the value of its inventory, meaning that it could no longer access the revolving line of credit, defaulted on the loans contained in the syndicated credit facility, and declared bankruptcy. *Id.* at Ex. D, APP 0176-77; Ex. E, APP 204, 240-41; Ex. I, APP 0378**.** Each of the financial institutions that participated in the syndicated credit facility has claims against Color Star in the bankruptcy proceeding. *See id.*

The underlying consolidated lawsuits have been brought by the financial institutions against the Individual Defendants and other individual actors outside the bankruptcy proceedings against Color Star. The financial institutions have sued the investment brokerage firm, law firm, investment broker, and counsel involved in facilitating the negotiation of the syndicated credit facility, along with the Verbeeks, alleging all of them engaged in a conspiracy to fraudulently induce the financial institutions to enter the syndicated credit facility. *See generally id.* at Ex.D, E, I.  With regard to the Verbeeks, each of the financial institutions alleges that Huibert ("Herb") Verbeek and Engelbrecht ("Brett") Verbeek had actual knowledge, before the credit facility closed, that Color Star's inventory was overstated by approximately $6.6 million. *Id.* at Ex. D, APP 0184-86, 0191-200; Ex. E, APP 0241-48; Ex. I, APP 0352-58, 0372-74**.** The Verbeeks allegedly knew, before the credit facility closed, that their former comptroller was threatening to sue the company for wrongful termination because he was fired when he insisted that the material misstatement of Color Star's inventory should be corrected and disclosed to the financial institutions who were negotiating the syndicated credit facility. *Id*.  Each of the Verbeeks individually guaranteed, in a personal guarantor agreement, that the financial disclosures associated with the credit facility agreement were true and correct, despite allegedly having personal knowledge that neither the $6.6 million pending inventory write-down nor the

threatened lawsuit relating to the overstated inventory had been disclosed to the financial institutions. *Id.* Each of the Verbeeks allegedly knew, at the time they authorized Color Star to enter the credit facility and made their personal guarantees, that Color Star would be unable to comply with the debt ratio covenants in the credit syndicate agreements and would therefore lose access to the revolving line of credit necessary to keep Color Star in business. *Id.*

### B.  Markel Has the Burden to Establish An Exclusion Applies to All Claims

Markel does not contest that the Verbeeks are insured under the D&O Policy for the type of wrongful acts alleged in the underlying litigation, specifically including "misstatements" and "omission[s]." *See* App'x to Df.'s Joint Mot. Part. Summ. J. [Dkt. #24], Ex. J, APP 0422. Markel nevertheless contends the Policy's creditor exclusion and/or its investor exclusion operate to preclude coverage based on the factual allegations plead in the underlying consolidated suits. Pf.'s Reply in Support of Suppl. Br. [Dkt #66] at 5.  As noted above, it is Markel's burden to prove these exclusions apply to the factual allegations in the underlying live pleadings; if even one plead claim is covered by the policy, Markel's duty to defend is not extinguished. *Potomac*, 198 F.3d at 551; *Evanston*, 370 S.W.3d at 380.  "Furthermore, in the event of ambiguity, any exceptions and limitations contained in a policy are strictly construed against the insurer." *Colony Nat'l Ins. Co.*, 487 F. App'x at 890-92 (internal citation omitted).

### 1.    Application of the Creditor Exclusion

Defendants argue there are several structural reasons why the creditor exclusion categorically fails:  first, they assert it is applicable only to suits seeking to recover on debts of Color Star.  Df.'s Joint Mot. Part. Summ. J. [Dkt. #23] at 17-18.  Next, they assert it conflicts with the obligations created by Policy language stating that Markel cannot deny coverage because of a party's bankruptcy. *Id.* at 18-19.  Finally, they assert the application of the creditor

exclusion would operate in violation of 11 U.S.C § 541(c) because it would create a forfeiture or termination of the Color Star bankruptcy estate's rights in the Policy.  *Id.* at 21-22.  For the reasons discussed below, none of these arguments categorically prevents application of the creditor exclusion to suits against individual officers and directors of Color Star.

           i.         The Creditor Exclusion and the Severability Clause

As the Individual Defendants correctly point out, the underlying Policy "expressly creates separate insurance policies" for Huibert Verbeek, Engelbrecht Verbeek, and Color Star.  Df.'s Joint Mot. Part. Summ. J. [Dkt. #23] at 16 (citing *King,* 85 S.W. 3d at 191; *see also* App'x to Df.'s Joint Mot. Part. Summ. J. [Dkt. #24], Ex. J, at APP 0415 (underlying insurance policy's severability clause).  Defendants contend this "severability clause" means that the creditor exclusion can apply only to claims brought against Color Star by its creditors.  Df.'s Joint Mot. Part. Summ. J. [Dkt. #23] at 17-18.  Each of the underlying lawsuits acknowledges that Color Star is not a defendant and notes that the financial institutions bringing suit have creditor claims against Color Star in Color Star's bankruptcy proceedings.  App'x to Df.'s Joint Mot. Part. Summ. J. [Dkt. #24], Ex. D, APP 0176-77; Ex. E, APP 204, 240-41; Ex. I, APP 0378**.**  The individual Defendants therefore assert, "The Verbeeks are not Color Star, and Regions and MCG/Comerica have not sued the Verbeeks in their capacity as creditors of Color Star."  Df.'s Joint Mot. Part. Summ. J. [Dkt. #23] at 18.

Markel, in contrast, contends the language of the creditor exclusion recognizes that "a **Company** creditor could assert claims against **Insureds** *other than the **Company*** in that party's capacity as a creditor of the **Company**."  Pf.'s Mot. Summ. J. [Dkt. #33] at 13 (emphasis in original).  Markel's construction of the creditor exclusion and severability clause is sensible and gives full effect to both provisions.  A creditor of Color Star could indeed bring suit against the

Individual Defendants in its capacity as a creditor of Color Star:  for example, each of the Individual Defendants is a personal guarantor on the credit facility extended to Color Star and could be sued to recover on this guaranty by creditors of Color Star.  *See* App'x to Df.'s Joint Mot. Part. Summ. J. [Dkt. #24], Ex D, APP 0169.

Of course, as Defendants point out, none of the financial institutions has alleged the Individual Defendants are liable, as guarantors, to pay off the amounts due and owing under the credit facility loans.  *Id.* at Ex. D, APP 0182-202; Ex. E, APP 0241-49; Ex. I, APP 0378-82**.**  Nor is any party suing the Individual Defendants for breach of contract arising out of their role as guarantors of the credit facility agreements.  *Id***.**  "[T]he insurer's duty to defend is limited to those claims actually asserted in an underlying suit. . . . The policy imposes no duty to defend a claim that might have been alleged but was not, or a claim that more closely tracks the true factual circumstances surrounding the . . . claimant's injuries but which, for whatever reason, has not been asserted."  *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co*., 279 S.W.3d 650, 655-56 (Tex. 2009).  Markel cannot apply the creditor exclusion on the basis of claims not asserted (or asserted only in the bankruptcy proceedings, which are not at issue here).  *Id.*

Markel acknowledges the Verbeeks are not being sued to collect Color Star's debt, but contends the creditor exclusion nevertheless applies because "the loan transactions and resulting unpaid debts forms the basis of every cause of action in the Lawsuits."  Pf.'s Mot. Summ. J. [Dkt. #33] at 15.  It is well settled that "the eight corners rule focuses on 'factual allegations that show the origin of the damages.'"  *Evanston*, 645 F.3d at 745 (citing *Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997)).  Markel relies on language in each of the underlying lawsuits alleging the plaintiff financial institutions were fraudulently

induced to loan Color Star money and that the plaintiffs were damaged in the amount of that loan and its expected interest returns.[4]

ii.       The Creditor Exclusion and the Bankruptcy Condition

Defendants contend that if the claims against them are brought by the financial institutions as creditors, then Markel is nevertheless obligated to provide coverage because the plaintiffs in the underlying lawsuits are bankruptcy creditors of Color Star.  Df.'s Joint Mot. Part. Summ. J. [Dkt. #23] at 18-19. Section XVII of the Policy provides that "Bankruptcy or insolvency of any Insured or of the estate of any Insured shall not relieve the Insurer of its obligations nor deprive the Insurer of its rights and defenses under this policy."  *Id.* at Ex. J, App. 0417.  Defendants' argument that Markel is obligated to defend against any suit brought by a bankruptcy creditor ignores the second half of this clause, which acknowledges that Markel retains its rights to assert coverage limitations notwithstanding a bankruptcy.  *Id.*

iii.      The Creditor Exclusion and 11 U.S.C. § 541(c)

Defendants argue in the alternative that the Creditor Exclusion is unenforceable in the event of an actual bankruptcy, because "it attempts to limit Markel's liability for claims presented by Color Star's creditors in violation of 11 USCS § 541(c)."  *Id.* at 21-22.  Under this statute, any interest of the debtor (Color Star) becomes the property of the bankruptcy estate

---

[4] *See, e.g.,* App'x to Df.'s Joint Mot. Part. Summ. J. [Dkt. #24], Ex. D, APP 0195 ("MCG Capital has been damaged by at least $13.5 million, the amount of its investment in the Junior Loan."); Ex. E, APP 0244 ("The goal of the common scheme described above . . . was to fraudulently induce Regions to enter into loan transactions for Borrowers' benefit by misrepresenting the value of Borrowers' inventor and preventing Regions from discovering the true value of that inventory."); *id.* ("As a result of the Defendants' common scheme and the acts done in furtherance of it, Regions was injured in an unliquidated amount to be determined at trial, but not exceeding $35,000 in principal loss, exclusive of interest, costs, fees, expenses, other damages, and other losses caused to Regions."); Ex. I, APP 0378 (Had Defendants disclosed the true value of Color Star's inventory, "Comerica would have declined to be a co-lender in the Regions Facility.").

notwithstanding any agreement that is "conditioned on the insolvency or financial condition of the debtor . . . and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property."  11 U.S.C. § 541(c).

While there may be factual scenarios where the invocation of the creditor exclusion would operate as an unenforceable limitation on Color Star's interest in the Policy as an asset of the bankruptcy estate, the Individual Defendants do not explain how Markel's refusal to defend lawsuits against them, in which Color Star is not a party, violates Section 541.  As Defendants themselves have stressed, the insurance policy is structured to "expressly create[] separate insurance policies" for Color Star and the Individual Defendants.  Df.'s Joint Mot. Part. Summ. J. [Dkt. #23] at 16 (citing *King,* 85 S.W. 3d at 191; *see also* App'x to Df.'s Joint Mot. Part. Summ. J. [Dkt. #24], Ex. J, at APP 0415 (underlying insurance policy's severability clause).  Markel's invocation of the creditor exclusion implicates the non-bankrupt Individual Defendants' interest in coverage, not the debtor, Color Star's, interest in the Policy.  *See* 11 U.S.C. § 541(c).

> 2.   *Are the Underlying Lawsuits Brought by Plaintiffs "In Their Capacity as Creditors" of Color Star?*

Having determined there is no reason the creditor exclusion is categorically inapplicable to individual insured's claims for defense costs under the policy, the Magistrate Court next considers whether the creditor exclusion is applicable on the specific facts alleged here.  As noted above, "[t]he policy imposes no duty to defend a claim that . . . more closely tracks the true factual circumstances . . . but which, for whatever reason, has not been asserted."  *Pine Oak Builders, Inc.*, 279 S.W.3d at 655-56.  Each of the underlying lawsuits at issue here is an attempt to recover against the Individual Defendants that expressly excludes any creditor claims against

Color Star, likely because those claims are being handled in Color Star's bankruptcy proceedings.  App'x to Df.'s Joint Mot. Part. Summ. J. [Dkt. #24], Ex. D, APP 0176-77; Ex. E, APP 204, 240-41; Ex. I, APP 0378**.**  Nevertheless, it is equally well settled that "the eight corners rule focuses on 'factual allegations that show the origin of the damages.'"  *Evanston*, 645 F.3d at 745 (internal citation omitted).  As Markel points out, each of the underlying lawsuits alleges damages arising from the Individual Defendants' fraudulently inducing the plaintiffs to enter into creditor relationships with Color Star.  *See supra*, note 4 and record citations therein.

The Individual Defendants assert the financial institutions' allegations of fraud are not brought in their capacity as creditors, but in their capacity as allegedly duped investors.  Df.'s Mot. Summ. J. [Dkt. #23] at 14-15; Resp. Pf.'s Mot. Summ. J. [Dkt. #33] at 8-10.  Defendants point, in particular, to plaintiff MCG's pleadings claiming breaches of the Texas Securities Act and other "investor-centric claims."  Df.'s Joint Resp. to Pf.'s Suppl. Br. [Dkt. #64] at 7.  The question, then, is whether MCG's invocation of Texas securities law alleges an independent factual basis for the financial institutions' claims against the Individual Defendants as investors, rather than as creditors.  *See Colony Nat'l Ins. Co.,* 487 F. App'x at 890-92; *Wilbros RPI, Inc.*, 601 F.3d at 311.

In the Magistrate Court's view, the answer is no—MCG's theories of recovery are not factual allegations that provide a basis for coverage independent of the factual allegations that trigger the creditor exclusion.  In reaching this finding, the Magistrate Court considered and harmonized several key principles underlying the eight corners rule:

(1) The scope of coverage and exclusions must be evaluated against the claims actually plead in the underlying litigation, without considering claims that could have been plead but

were not. *Pine Oak Builders*, 279 S.W.3d at 655-56. (2) The claims and legal theories in the pleading, however, are not dispositive of the coverage issue. *Evanston*, 645 F.3d at 745. (3) To evaluate coverage, the reviewing court must determine whether the ***factual allegations underlying the claims*** actually plead describe damages that originated from a covered loss or from a cause that falls within the scope of an exclusion. *Colony Nat'l Ins. Co.,* 487 F. App'x at 890-92; *Wilbros RPI, Inc.*, 601 F.3d at 311. (4) If an exclusion applies, the court must determine whether the underlying factual allegations describe some covered conduct that is an independent cause of the damages, in which case the insurer must defend the entire suit. *Potomac*, 198 F.3d at 551; *Evanston*, 370 S.W.3d at 380. (5) If the facts alleged describe only excluded conduct and alternate theories of recovery that rest on or are derivative of the same facts that trigger the exclusion, no duty to defend applies. *Wilbros RPI,* 601 F.3d at 311 (citing *Travelers Indem. Co.*, 166 F.3d at 771).

Thus, in this case, Texas law requires that the undersigned make a finding determining whether claims actually alleged in the underlying lawsuits—fraud and violation of the Texas Securities Act—are supported by factual allegations showing the plaintiff financial institutions were damaged in their capacity as creditors of Color Star or in their capacity as investors in Color Star. *Pine Oak Builders, Inc.*, 279 S.W.3d at 655-56; *Evanston*, 645 F.3d at 745 (internal citation omitted). To the extent the damages alleged arose in both creditor and investor capacities, the undersigned must consider whether the underlying factual allegations describe two independent claims or two alternate theories of recovery arising out of the same facts. *Wilbros RPI,* 601 F.3d at 311 (citing *Travelers Indem. Co.*, 166 F.3d at 771). In making these determinations, the Magistrate Court expresses no opinion on the validity of the claims plead or the underlying factual allegations, but simply compares what is stated within the four corners of

the live pleadings with what is covered (or excluded) within the four corners of the Policy. *Pine Oak Builders*, 279 S.W.3d at 655.

i.    The *Howey* Distinction Between Creditors and Investors

As noted above, neither party provided any legal authority in their original cross motions for summary judgment to support their respective assertions that the financial institutions were acting "in their capacity" as either creditors or investors.  Therefore, the Magistrate Court asked for supplemental briefing on the distinction between a creditor-debtor relationship and an investment relationship that was first articulated in *Howey*, 328 U.S. 293.

In their supplemental briefing, Defendants acknowledge that MCG, in particular, has specifically alleged the credit facility is a security within the statutory definition provided by the Texas Securities Act, and "avers that it *believed itself* to be an investor, and asserts, in addition to others, investor-centric claims."  Df.'s Joint Resp. to Pf.'s Suppl. Br. [Dkt. #64] at 7.  Defendants further acknowledge *Howey* distinguishes such "investor-centric" claims from other claims arising out of commercial loan disputes.  *Id.*  Defendants, however, contend *Howey* is applicable only to the issue of whether the underlying credit facility is or is not an investment agreement, and are adamant that "[t]he Court may not consider the truth or falsity of the allegations made by MCG, nor make an inquiry under *Howey* as to facts not alleged in the underlying pleadings as a means of applying the Bankruptcy and Creditor Exclusion."  *Id.* at 8 (citation omitted).

Defendants misunderstand the thrust of the Magistrate Court's request. The truth or falsity of MCG's allegations that the credit facility is a security is not at issue here.  Rather, as Plaintiff Markel concedes, "the issue of whether the Loans at issue in the Underlying Litigation are securities as addressed in *Howey* is directly relevant to whether the underlying plaintiffs  . . .

26

are suing in their respective capacities as creditors of Color Star."  Pf.'s Reply in Support of Suppl. Br. [Dkt. #66] at 1.

MCG's allegations that the credit facility is a security, whether ultimately true or false, tend to suggest MCG is suing, not in its capacity as the creditor on a commercial loan, but as an investor who was allegedly fraudulently induced to invest by the Verbeeks and their codefendants. Despite MCG's "investor-centric" pleadings, however, Markel contends that none of the financial institutions have made factual allegations sufficient to cast them as "investors" rather than "creditors" under *Howey*.  Pf.'s Suppl. to Mot. Summ. J. [Dkt. #58] at 6-8.

*Howey* and its progeny establish that an investment contract is distinguished from other transactions (such as a commercial loan) if it is "a scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." *Howey*, 328 U.S. at 298-99.  Markel cites *Resolution Trust Corp. v. Stone*, 998 F.2d 1534 (10th Cir. 1993) for the proposition that "because the plaintiff received specific interest payments from its investment. . . rather than dividends tied to the profitability of [the issuer] or any other entity," the loans at issue were not securities or investment contracts.  According to Markel, the financial institutions have not alleged they expected any return other than their principal and interest payments, and therefore their factual allegations, whether true or false, establish they are suing to recover for the alleged fraud in their capacity as creditors of ColorStar.  Pf.'s Suppl. to Mot. Summ. J. [Dkt. #58] at 6-8.

The Individual Defendants do not attempt to rebut Markel's characterization of the financial institutions' claimed damages as the "principal and interest payments" on the allegedly fraudulently induced loans.  *See id.*  Instead, they note that MCG also seeks statutory damages based on alleged violations of the Texas Securities Act. Df.'s Joint Resp. to Pf.'s Suppl. Br. [Dkt.

#64] at 3.  The Individual Defendants further assert MCG "*believed itself* to be an investor" with respect to Color Star.  *Id.* at 7.

The mere fact that MCG has asserted legal theories of recovery based on the Texas Securities Act is not controlling with regard to whether the creditor exclusion applies to the Individual Defendants' claims against Markel. *Evanston*, 645 F.3d at 745 (internal citation omitted).  MCG's claim for statutory damages is not a factual allegation regarding the origin of the damages, but an alternate legal theory of recovery.  *See* App'x to Df.'s Joint Mot. Part. Summ. J. [Dkt. #24], Exhibit D, 0184-87.  In "eight corners" cases, Texas courts determine whether an insurer has a duty to defend based on "the factual allegations showing the origin of the damages," not the legal theories espoused by the plaintiff in the underlying suit. *Colony Nat'l*, 487 F. App'x at 890-92.  Further, to the extent MCG does make allegations that its damages arise from a breach of the securities laws, the conduct alleged to breach the securities laws is the same conduct alleged to have fraudulently induced MCG to loan money, and the damages allegedly caused are the same—the amount of money loaned and interest expected. App'x to Df.'s Joint Mot. Part. Summ. J. [Dkt. #24], Exhibit D, 0184-187; 0191-95.  Thus, the securities claim is entirely derivative of the fraudulently induced creditor claim.  *Id.*  "'Texas law is clear:  where a claim against an insured would not exist 'but for' conduct explicitly excluded by the policy, the dependent claims are also not covered under the policy, regardless of whether the insured against whom the derivative claims are directed actually engaged in the excluded acts.'"  *Travelers*, 166 F.3d at 771 (quoting *Canutillo Indep. Sch. Dist. v. Nat. Union Fire Ins. Co. Of Pittsburgh*, 99 F.3d 695, 704-05 (5th Cir. 1995)).

Markel is correct that none of the financial institutions (even MCG) has made factual allegations describing damages that were sustained in some capacity other than as a creditor of

Color Star.  *Id.*  "[In] this Circuit, a loan is not automatically considered a security."  *Wolfe v. Bellos*, No. 3:11-cv-02015-L, 2012 U.S. Dist. LEXIS 26452 (N.D. Tex. Feb. 28, 2012) (citing *McClure v. First Nat'l Bank*, 497 F.2d 490, 492 (5th Cir. 1974)).  Instead, a loan transaction is "characterized as commercial or investment in nature," *Bellah v. First Nat'l Bank*, 495 F.2d 1109, 1112-13 (5th Cir. 1974), based on whether the arrangement is "so structured as to contemplate, at the outset, some risk—either that the investor could lose his investment, or that the value of his return could fluctuate."  *Guidry v. Bank of LaPlace*, 954 F.2d 278, 284 (5th Cir. 1992).

Whether or not the credit facility at issue is ultimately determined to be a security, a commercial loan, or another type of transaction entirely, the allegations in the current underlying pleadings—including MCG's "investor-centric" pleading—state that the financial institutions' damages are the amount of principle and interest they expected to recover from the loans they were fraudulently induced to make.  *See supra*, note 4 and record citations therein  The financial institutions do not allege they anticipated any extra profit based on Color Star's performance, or any risk beyond the commercial risk that a debtor will not repay the agreed principal and interest on a loan.  *Guidry*, 954 F.2d at 284.   Under these circumstances, it appears the financial institutions have brought their complaints in their capacities as defrauded creditors of Color Star. To the extent the factual allegations in the underlying complaints can be taken to describe conduct that would violate Texas securities law, that alleged conduct is the same as the conduct underlying the creditors' fraud claims, and not a separate, independent cause of damages; therefore the exclusion remains applicable.  *Travelers*, 166 F.3d at 771.   Accordingly, the undersigned finds the creditor exclusion applies to bar the Individual Defendants' claims for defense costs under the D&O Policy.

## 2.    *Application of the Investor Exclusion*

The Magistrate Court is of the opinion that all of the facts alleged in the underlying complaints are within or derivative of the creditor exclusion, as explained above.  In the event that the District Court finds the Individual Defendants have identified factual allegations in the pleadings that establish claims for damages brought by the financial institutions in their capacities as investors, distinct from the claims brought in their capacity as creditors, Markel argues the investor exclusion in the policy should apply to preclude coverage.  Pf.'s Suppl. to Mot. Summ. J. [Dkt. #58] at 8-10.  Therefore, a brief analysis of this exclusion is appropriate.

It is Markel's burden to establish the application of any exclusion.  *Ewing Constr. Co. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 33 (Tex. 2014).  The investor exclusion, by its terms, does not apply to "a private-placement transaction exempt from registration under the Securities Act of 1933, as amended."  App'x to Df.'s Joint Mot. Part. Summ. J. [Dkt. #24], Ex. J, at APP 0423.  Markel brushes this limitation aside by simply asserting, with no citation to the record or case law, "carve-out 1 does not apply because the securing of the Loan is not a 'private placement transaction.'"  Pf.'s Suppl. to Mot. Summ. J. [Dkt. #58] at 10.

Whether a private-placement transaction is exempt from registration under the Securities Act is a fact-sensitive inquiry.  *Pinter v. Dahl*, 486 U.S. 622, 627 (1988).  The offering must (1) not be made by any means or form of general solicitation or advertising; (2) be made only to those persons whom the issuer has reasonable grounds to believe are of knowledge and experience which would enable them to evaluate the merits of the issue or who are financially able to bear the risk; and (3) be made only to those persons who have access to the same kind of information as would be contained in a registration statement. *Mary S. Krech Trust v. Lakes Apartments*, 642 F.2d 98, 101 (5th Cir. 1981).  "Under this rule, the issuer must have reasonable

grounds to believe, and must believe, that there are no more than thirty-five purchasers from the issuer." *Id.*

The Magistrate Court does not engage in any factual finding as to whether the credit facility at issue in the underlying lawsuits is a commercial transaction or a security, much less whether it is a private placement security. *See Pine Oak Builders*, 279 S.W.3d at 655 ("In deciding the duty to defend, the court should not consider extrinsic evidence from either the insurer or the insured that contradicts the allegations of the underlying petition.") The factual allegations in the underlying petitions, however, are that the syndicated credit facility was offered by a FINRA licensed broker to two banks and a licensed SBIC, and supported by a "data room" and multiple financial disclosures (albeit allegedly misleading ones).   Whatever the ultimate truth or falsity of these factual allegations, the pleadings on their face allege several of the hallmarks of a private placement transaction. *See Krech*, 642 F.2d at 101; 15 U.S.C. §77d(2) (statutory basis for "private placement" exemption); 17 C.F.R. §230.501 (defining "accredited investors" for purposes of private placement transactions as entities including banks and SBICs); *id.* at §230.500 (failure to comply with technical requirements of SEC regulations governing private placements ("Regulation D") does not preclude application of statutory "private placement" exemption).   A statutorily exempt private placement is, by definition, outside the scope of the Investor Exclusion in the D&O Policy.  App'x to Df.'s Joint Mot. Part. Summ. J. [Dkt. #24], Ex. J, at APP 0423.  Therefore, in light of the factual allegations on the face of the underlying complaints, Markel's unsupported statement that the Loan is not a private placement transaction fails to meet the insurer's burden to prove that the investor exclusion limits the duty to defend the underlying cases. *Zurich,* 268 S.W.3d at 491; *King,* 85 S.W.3d at 187. "Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage,

the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy."   *Zurich,* 268 S.W.3d at 491 (citing *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965)).

As discussed above, however, the underlying complaints, as currently plead, make factual allegations that fall within or are entirely derivative of the facts triggering the creditor exclusion to the D & O Policy.  *Wilbros RPI,* 601 F.3d at 311; *Travelers*, 166 F.3d at 771. Therefore, the Magistrate Court RECOMMENDS the District Court GRANT Plaintiff's Motion for Summary Judgment [Dkt. #33].  The Magistrate Court further RECOMMENDS the District Court DENY the Verbeek's Motion for Partial Summary Judgment [Dkt. #23], finding Markel has no duty to defend the underlying lawsuits based on the current pleadings and therefore owes no attorney's fees or penalties under Texas law.

## IV. RECOMMENDATIONS

For the reasons outlined above,

IT IS ORDERED that Plaintiff's Motion For Leave to File Second Amended Complaint [Dkt. #48] is GRANTED;

IT IS FURTHER ORDERED that Defendants' Motion to Strike Plaintiff's Supplemental Brief [Dkt. #60] is DENIED.

The undersigned further RECOMMENDS the District Court GRANT Plaintiff's Motion for Summary Judgment [Dkt. #33].

Finally, the Magistrate Court RECOMMENDS the District Court DENY Defendants' Motion for Partial Summary Judgment [Dkt. #23].

## V. OBJECTIONS

32

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C);  *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED September 17, 2015

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE

33